[Crim. No. 1980.   Third Dist.   Dec. 31, 1946.]

THE PEOPLE, Respondent, v. GLEN PAUL WELLS, Appellant.

Harold Wyatt for Appellant.

Robert W. Kenny, Attorney General, James O. Reavis, Deputy Attorney General, Chester E. Watson, District Attorney, and Casey C. Carr, Assistant District Attorney, for Respondent.

ADAMS, P. J.—▮ On this appeal the only question for decision is whether the trial court abused its discretion in refusing to permit defendant to change his plea of guilty and enter a plea of not guilty. Defendant was charged with

a violation of section 266g of the Penal Code in that he had persuaded his wife, a minor of the age of seventeen years, to enter a house of prostitution for the purpose of prostitution. At the preliminary hearing where defendant was represented by an attorney of his own choosing, the wife testified in support of the allegations of the complaint. On arraignment before the superior court defendant appeared with his attorney, but the latter, after he had conferred with defendant, informed the court that he no longer represented him but would go ahead with the arraignment. Thereupon the following occurred:

"Mr. Carr [Deputy District Attorney]: Well, under those circumstances, Your Honor, it might be well to get another attorney appointed to go ahead with it if he hasn't means with which to hire one, rather than have him arraigned.

"The Court: Mr. Wells, have you any means with which to hire a lawyer?

"The Defendant: I don't think I'll need one, Your Honor. I want to plead guilty and ask to refer me——

"The Court: You want to waive a lawyer?

"The Defendant: No, sir.

"The Court: You want to waive the services of a lawyer, you don't want the services of a lawyer, is that right?

"The Defendant: Yes, that is right.

"The Court: Very well, you may proceed with the arraignment, Mr. Clerk."

Then a copy of the information was handed to defendant and it was read to him, after which the following transpired:

"The Court: What is your plea, guilty or not guilty?

"The Defendant: Guilty, Your Honor.

"The Court: You have a right to wait at least two days before having judgment pronounced, or you can waive time, what do you wish?

"The Defendant: I would rather wait two days, I guess, and see the Probation Officer about this.

"The Court: Well, nothing will be gained, if you want the matter referred to the Probation Officer, in continuing the matter two days. If it is your desire to have the matter referred to the Probation Officer, I suggest you will gain time by proceeding now.

"Mr. Carr: In other words, Mr. Wells, it isn't referred to the Probation Officer until——

"The Court: (Interposing) It is up to you. If you want it continued two days, that is all right.

"The Defendant: Continue it two days, then.

"The Court: All right. Continued until Saturday morning. The defendant is remanded in the meantime.

---

"Mr. Carr: Your Honor, I believe Mr. Wells has changed his mind and he wants to take his sentence now. Is that right, Mr. Wells?

"The Defendant: Yes, sir.

"Mr. Carr: And ask that the matter be referred to the Probation Officer. Is that right?

"The Defendant: Yes."

A sworn statement was then taken from the defendant in which he admitted that he had been convicted of burglary in 1941 and sentenced to a reform school in Texas, but stated that he had been granted probation. He also testified to service in the armed forces with an honorable discharge, after which he had married and brought his wife to California in January or February, 1946. He admitted that since that time his only activities had been those of a gambler, and that he had received money from his wife's prostitution; that he was addicted to alcoholism. The matter was then referred to the probation officer.

On May 29th, defendant appeared with an attorney, the matter was continued, and on June 5th, the probation officer made an unfavorable report. A report by a psychiatrist was also filed. Probation was denied, whereupon defendant's attorney moved the court for an order permitting defendant to withdraw his plea of guilty and enter a plea of not guilty, and in support thereof put the defendant on the stand.

During the course of the examination of defendant which followed he stated that when he had employed his former attorney he had paid him a fee of $102 and understood that the attorney would see him through the entire matter; that when he entered his plea of guilty he did not feel that he was guilty and still felt that he was not; that he entered such plea because he did not have any more money; that he understood that the court would appoint an attorney for him, but that it seemed that everybody in the jail said that the lawyers the court appointed "probably would work against you more than for you"; also that he did not want his mother

to find out; that he was "always scared in the courts." At the conclusion of his testimony the court said:

"THE COURT: Q. You consented that your wife practice prostitution, didn't you? A. Yes, sir; we were breaking up and I was going back home. She said she was going to stay.

"Q. You took the money that she got in that business, didn't you? A. No, sir, I took no money from her.

"Q. What became of the money that she made? A. I don't know, sir."

The report of the psychiatrist was to the effect that defendant was abnormal, that he had no sense of responsibility or the ability to differentiate, but was not definitely feeble-minded. The report of the probation officer set forth statements purporting to have been made to the officer by the defendant, and included an admission made to that officer that defendant had solicited the field of prostitution for his wife, that the girl had engaged in prostitution and that defendant received her earnings therefrom. The conclusion of that officer was that defendant was "abnormal," but that he knew right from wrong; and that public interest would be best served if probation were denied.

The court denied the motion for change of plea, saying: "Well, the Court doesn't feel that there is any reasonable question about the sanity of this defendant; if it felt that there was, he would gladly grant the motion."

Under the circumstances stated we cannot say that the trial court abused its discretion in denying defendant's motion for change of plea. In *People* v. *Smink,* 105 Cal.App. 784, 790 [288 P. 873], the court quoted from *People* v. *Schwarz,* 201 Cal. 309, 314 [257 P. 71], to the effect that where on account of duress, fraud, or other fact overreaching the free will and judgment of a defendant he is deprived of the right of a trial on its merits, the court may grant him the privilege of withdrawing his plea of guilty; but that such exceptional remedy applies only upon a strong and convincing showing of the deprivation of legal rights by extrinsic circumstances. Other pertinent cases are cited in the Smink case. Here there is no showing that defendant's plea of guilty was entered by reason of duress, fraud or any overreaching of his free will and judgment. He had had the benefit of advice of counsel of his own choosing and it does not appear that he had not been advised by such counsel of his legal rights and the probable consequences of the plea which he entered. He had been be-

fore a criminal court previously, and had then been granted probation, so he was not entirely unfamiliar with criminal procedure. He knew from the testimony taken at his preliminary hearing what testimony probably would be produced against him if he were granted a trial on the merits; he had made admissions of guilt; yet he made no offer to produce at a trial any evidence which would tend to prove that he was not guilty. He did not contend that his plea was induced by anything said or done by the prosecution. Though advised by the court of his right to counsel and to a delay he elected to proceed without counsel and take his chances on a favorable report by the probation officer; and the motion for change of plea was made only after that officer had filed his report and recommended that probation be denied.

The judgment appealed from is affirmed.

Peek, J., and Thompson, J., concurred.